The next case on the call of the docket is Agenda No. 2, No. 128, Board 6-1, People of the State of Illinois v. Jorge Reyes. Counsel for the appellant, are you ready? Good morning, your honors, and may it please the court. My name is Andrew Moore and I'm here on behalf of Jorge Reyes in this matter. The two issues before this court, while separate in nature, both deal with the revocations of fines and how the trial court should handle these petitions. First, the revocation of fines petition should be afforded the procedures in Rules 105 and 106. And second, Section 592 petitioners should be able to seek the revocation of any fine levied against him outside of those specifically accepted in Chapter 15 of the Vehicle Code. Mr. Reyes asked this court to consider both issues here as success on one does not necessarily preclude a holding on the other. First, I'll discuss why Rule 106 and in turn the 30-day response period in Rule 105 should apply to 592 petitions for revocation of a fine. Counsel, when you do that, would you also explain to us why Rule 104 doesn't apply? I believe Rule 104 does still apply. Okay, so how does that work with 105 applying? 105 just has some additional notice requirements and 105 has the 30-day response period in it. So, as it stands, there's no response period here and we're arguing that because 592 petitions are essentially the same kind of petitions as specifically listed in 106, that this court consider 592 petitions for that rule as well. So, looking at the three specifically listed petitions in Rule 106, there's not really any reason to not give 592 petitions these same procedural processes. All of these petitions are seeking to revisit and modify an existing final judgment. They seek to add to the record in order to provide the court with a basis for the relief requested and there are situations where the apply on its own. Like petitions should be treated alike, so 592 petitions should be treated the same as those in 106. Further, it's important to point out here that 592 petitions will be pro se essentially 100% of the time given the nature of the petitions and there's a number of policy reasons why these petitions should have a 30-day response period as well. Counsel, was the state in default as mentioned in Rule 105? Was the state in default? Yes. That's not really applicable to this type of petition and it's not applicable to like 214.01 petitions, so Rule 105... My question is, were they in default? No. And doesn't Rule 105 speak to circumstances involving default? Yes, it does. And then Rule 106 applies those same rules to situations where the state being in default doesn't particularly... It's not applicable. And the 1218.3G release from judgments, that's not a situation where an individual is seeking to basically lift a lien. Having the court officially announcing that you've paid your fines, so somebody pays their fines, they're done. The other party's not in default in that situation, but they still have to reopen the judgment to enter that order that the fine's been paid. So these Rule 105 notice requirements should apply here because the parties involved need to be notified when the proceeding has ended. And it would set a standard statewide procedure for how these petitions would make their way through the court. The pro se litigant would be benefited by a state response because it would help him understand where his claims might be deficient or additional evidence that he could enter in to show good cause. Whereas now, as seen in this case, you've got three decisions that aren't informing this petitioner at all as to what he needs to allege. Good cause, the courts have held that good cause is merely just showing the ability not to pay. Where here, he's alleging he doesn't have any money, so... Is that what he alleged? He's alleging that... What was the balance of his account at the time that he made this motion? He had, what, $200? So he had enough to pay what he owed, which was, am I correct, was it $165 or $135? It was, I think, in the $130s. I don't remember exactly. But that's in his prison trust account, so it's not a good policy to withhold money from inmates in order to pay these fines. The legislature hasn't deemed that as something that is a way to collect... What are you basing that statement on? Well, there's not any statutes that I know of that would allow the state to seek collections over an inmate in prison over their trust account. I guess what I'm getting at, I mean, those are considered part of his assets, right? Mm-hmm. I'm sorry? Yes, they would be his assets in prison. And if his fine is over 50% of his total assets, that's persuasive that it's good cause that that fine should be forgiven, particularly when his monthly income is $10 or $15, depending on which petition you're looking at. But even in that, you know, where his income is just what he has in his prison account, but he also doesn't have any expenses and he doesn't anticipate those fines released. I mean, he indicates he's going to go to a shelter, so even though it may be onerous in some respects, he hasn't demonstrated or didn't allege that he had any other bills or things he had to pay, correct? Correct. But the standard isn't he has zero ability to pay. It's that he has a good cause and inability to pay. So the fact that he doesn't know of specific expenditures for housing, that runs both ways. He doesn't have an expense, but he also doesn't have any money to pay for housing. He doesn't have a job lined up. Basically, he's alleging that when he gets released, he's homeless, he'll maybe have the money that's in his prison account to his name, and that's it. So you're looking at somebody who's going to be homeless with $200 in his bank account. Do we want to enforce these types of fines or do we want to allow a person in that situation to find a way out from under that and start new? Counsel, can you speak a little bit about what the standard of review is that we should be applying? I know that there seems to be a disagreement on that. Yes. So it's kind of an interesting situation in the Supreme Court arguing court rules because there are statutory interpretation rules that should be applied. But this court has complete governance over these rules, so it should be a de novo standard of review. And if you all agree that a 592 petition should be included in 106, you have the authority to do that. And the appellate court didn't have that authority because at that level, they have to interpret the rule using the normal statutory interpretation. So even their holding shouldn't be held with that much deference because this court has the ability to essentially scrap and rewrite this rule as it sees fit. In conclusion, Mr. Reyes asked this court to use its supervisory authority to hold that Rule 106 should apply to 592 petitions. Unless there's any other questions on this issue, I'll move on. The next issue is involving which fines can be revoked through Section 592. 592 is a very simple statute. It allows for the revocation of fines so long as two simple conditions are met. One condition is that the fine isn't authorized by Chapter 15 of the Vehicle Code. And the second condition is that a judge agrees that good cause exists. Yet the appellate court has wrapped two fairly specific additional limitations into that section. Specifically, the appellate court has held that a fine in 592 is only one that a judge has discretion to impose and is specifically authorized by Section 591. This holding is in conflict with its previous holdings in Ruff, Garza, and Rivera, which all held that mandatory fines outside of 591 are revocable under 592. And those cases, it's important to point out, discusses fines in a more modern, I guess, interpretation where there's been a lot of discussion in the courts over fines versus fees, what's a fine, what's a fee. In those cases, look at fines in 592 under that definition and not the more antiquated 1986 penal fines definition that the state is arguing. In terms of statutory interpretation, which is what the job is here, we've got to determine what is meant by the word fines in 592, this court should apply the clear and unambiguous language of this statute. It's important to note that Sections 511, which houses the definitions that apply across the entire UCC, doesn't define what a fine is, nor does 591 or 592. In that situation, a fine should be defined by the standard, commonly accepted definition. But if this court believes that this is clear or ambiguous, the court has interpretations, rules to follow, all of which come down in Mr. Reyes's favor. The rule of lenity, if a statute is ambiguous, it should be ruled in the benefit of the defendant. And the only way around that is unless an application would construe a statute so rigidly that it defeats the purpose of the legislation. And here we don't have a lot of input as to what the legislative intent behind 592 is. But in the appellate court case, Barajas, they talk about there is a little bit, and basically there was a council comment in 1973 regarding this statute, which said that it's designed to mitigate a fine by a showing of inability to pay or hardship. There's not, you know, the legislative intent from what we have seems to be geared towards the relief of the fine, not, you know, the relief of, I guess, the relief of a fine in terms of this person's in debt and they need to get out of it, versus figuring out which particular fines should be allowed. Interpretations shouldn't make portions of the statute meaningless or superfluous. And reading court should not add words to the legislature that it has not chosen itself. And here the appellate court- Counsel? Yes. So what about the Bennett decision that limited 592 to discretionary fines? We know that the legislature amended 592, and at that time they had the benefit of the Bennett decision, which said it only applies to discretionary fines, and yet they didn't make any change as it relates to that. Is that something we should consider? Potentially, but I think it's more the changes in 591 and the changes of how fines and fees are discussed should be more persuasive because the language in-excuse me. The Chapter 15 of the Vehicle Code language was added in 92, and that was 30 years ago. A lot has changed since then. There's more appellate court cases that are talking about 592 in terms of how fines are talked about now. There's not a lot of cases that are talking about penal fines in the way that Bennett talks about it. And beyond the normal rules of statutory interpretation, there's a number of policy reasons why the appellate court holding doesn't particularly make sense. First, it held that Bennett still holds here, yet 591 has fundamentally changed. It predates the vast majority of litigation over fines and fees. And further, there's sections between. Throughout the history of the UCC, there's been sections that delineate fines listed between 591 and 592 that have been both mandatory and discretionary. For instance, when Bennett was heard, 591.1 detailed fines specific to drug offenses, which Ruff, Garza, or these are mandatory fines specific to drug offenses, which Ruff, Garza, and Rivera all held were revocable through 592. So you have multiple court cases talking about the revocation of mandatory fines. And just generally, it's a good policy to allow fines to be revoked, regardless of what the legislative intent on where that money is going, or if it's in addition to the fine authorized in Section 4.5. Counsel, if all fines can be revoked, is there a reason that some are designated mandatory and others not? That gets into more of the distinction between the assessment of the fine initially and whether or not that fine can be revoked. The state's argument, and Bennett and the appellate court below, are taking rules that apply to when a fine is imposed and applying those rules to whether or not a fine can be revoked. Those are two separate distinctions. And there's rules in 591.1 about how a judge should determine what a fine is, and if the fine's mandatory, he has to impose it. There's not anything that suggests that that fine can't later be revoked if there's good cause that's shown. So I guess to answer your question, it's just important to keep in mind the distinction between imposing a fine and whether or not that fine can be revoked. And the legislature has an added language about revocation of the fines that say anything about it has to be discretionary. It has to be specifically listed in 591, which is what the appellate court held. And also, currently, 591.3 has a discretionary fine for certain theft offenses. Under the appellate court's decision, those fines wouldn't be revocable because they're not specifically listed in Section 591. In closing, all the tenets of statutory interpretation should guide this court to agree with Mr. Reyes. The cases that the appellate court have relied upon for its holding are either interpreting an out-of-date version of 591 or are just not applicable to whether a fine cannot be revoked. As such, we ask this court to reverse the appellate court below and either remand to the appellate court or circuit court with instructions on both issues 1 and 2. Is there a question? Thank you much. Any more? Nothing? Thank you. Good morning, Your Honors. Good morning, Counsel. May it please the Court, Assistant Attorney General Alistair Whitney on behalf of the people. Your Honors, I'd first like to start with a defendant's argument or my colleague's argument here that somehow Section 2-1401 rules should apply to the court's disposition of a Section 592 request for relief. They do not apply because there are no rules, nor are Supreme Court Rules 105 or 106, nor is there any case law, nor is there anything in the plain language of Section 592 or Section 2-1401 that imports the specific rules that People v. Vincent read that apply to Section 2-1401 into Section 592 proceedings. Counsel, can you speak to the standard of review? Yes, Your Honors. So with respect to the question of the statutory interpretation presented here, with respect to whether the fines that defendant seeks relief from are subject to relief under the statute, that, of course, is a de novo standard of review. But whether the court properly determined that defendant here failed to show good cause, that is under an abuse of discretion standard of review, Your Honor. So I just want to point out again that Section 2-1401 and Section 592 requests for relief are very different. That's why they have different rules, and that's why specific rules apply to Section 2-1401. Section 2-1401 can be used to challenge the underlying propriety of a civil or criminal judgment. That's why there are Supreme Court Rules 105 and 106 that give the opposing party 30 days to respond to the petition seeking relief from judgment, whereas Section 592 does not challenge the underlying criminal offense. It only asks that a court allows a defendant to ask a court to grant relief on the penal fine. So defendant leans heavily on one sentence in dicta in People v. Mingo, which concluded that both 592 and 2-1401 actions are both freestanding collateral actions. But there is nothing in Mingo that says that 2-1401 rules must govern requests for relief under Section 592, nor is there anything in Mingo that says that a court may not sua sponte deny a request for relief under Section 592 when it is clear that the request is meritless. And here, Your Honors, the request is meritless because, and if there was any error, it was harmless because defendant is simply not entitled to relief under Section 592. As we look at the plain language of what Section 592 says, 592 contemplates relief from the fine. It does not contemplate relief from any fine or all fines or fines. It just says the fine. And the appellate court in People v. Bennett, which is a 1986 case, has construed that term to mean the penal fine authorized by Section 591. Now, the penal fine. Therein lies the rub. I understand what Bennett said, but isn't it our responsibility to look at the plain language of the statute? And I don't see the word penal anywhere in 55-9-2. It simply says that the fine or the unpaid portion, and the only exception I see, is violations, fines for violations under Chapter 15 of the Vehicle Code. I mean, aren't you asking us to read in something that's not there? No, Your Honor. We're actually saying that the statute's explicit reference to the term the fine can only mean the penal fine. It cannot mean this array of other non-penal fines that are imposed under different code sections. Like for the defendant here, he has fines that were imposed pursuant to his conviction that are provided under the Vehicle Code, under the county's code. Section 591 provides the penal fine. And that is a fine that gives the court discretion to impose pursuant to any felony, misdemeanor, or petty offense conviction. And so it is our position that when Bennett identified that the fine referenced in Section 592 means the penal fine authorized by Section 591, that that was the appropriate interpretation of the term the fine, and it is cabined to just one type of fine. And moreover, if we look at the unified statutory scheme in which 592 is codified, I think it makes it more clear that what the fine is referencing in the statute means the penal fine. As I just discussed, Section 591 authorizes the imposition of the penal fine, and Section 592 says that a court upon a defendant's showing of good cause may revoke that penal fine or modify the payment of it. And Section 593 then offers relief from any fine upon a defendant's default of the payment of any fine. So another thing to point out here, too, Your Honors, is that the penal fine, it is a purely punitive fine, and it is imposed, like I said, pursuant to conviction. The court has discretion to impose it. Unlike the fines that defendant the court imposed on defendant here, which are non-penal fines, the court has no discretion to impose those fines. It must impose them. And one of the reasons why the legislature has established that it has no discretion to impose those fines is because those fines fund valuable state agencies and resources. For example, the $1,000 DOI technology fine that defendant paid helps cover the cost of radar tools for police officers to pull over speeding drivers. The $15 state police fine helps fund state police operations. And the $30 Child Advocacy Center fine helps fund the Child Advocacy Center. It makes So is that something we should be considering? Yes. Do the money help? Well, yes, Your Honor, but it's to the extent the legislature has made those fines mandatory. So our position is that reading Section 592 to apply to allow a court to revoke mandatory fines, which it perhaps days earlier just imposed on a defendant, would seem to undermine the legislative intent behind the enactment of those fines and making them mandatory. It makes sense that a court under Section 592 would only have the authority to impose the discretionary penal fine under 591 because it is basically making that 591 consideration of a defendant's ability to pay under 592 when a defendant comes to court and says, hey, here's some information that did not exist at the time of sentencing and that affects my ability to pay. So the court is basically extending its discretion that it had under a Section 591 determination under Section 592 to say, okay, we're going to revoke or modify upon your showing of good cause the payment of this penal fine. And, Your Honors, I would also like to point out that concluding that the term the fine means the penal fine is made all the more clear in light of the history of legislative acquiescence to the Court's decision in Bennett. And as discussed, the Court concluded in Bennett that the fine means the penal fine. And later in that case, I would like to point out that the Court explicitly rejected defendants' argument that a fine imposed under the Victims Act, which is a non-penal fine, could be eligible for relief. Later in the Court's case in Island Lake v. Parkway Bank, the Court determined and again confirmed that fines imposed for municipal ordinance violations were also not subject to relief under Section 592. That all tells us here that the fine that is simply subject under Section 592 is the penal fine. In contrast, and I would like to point out those cases remain good law, and the legislature has not once amended either of those statutes in a way that undercuts Bennett or Island Lake's holding in the many decades since those cases were decided. In contrast, when the appellate court in People v. Ulrich determined that Section 591 to apply to non-penal fines imposed under Chapter 15 of Yoko Code, the legislature promptly amended both Section 591 and Section 592 to specifically foreclose that unintended application of the statutes. This is the reason why both statutes now include that specific language, excluding Chapter 15 Yoko Code fines, because the legislature before this Court even had the opportunity to weigh in on People v. Ulrich, the legislature the same year the appellate court erroneously decided Ulrich said we are excluding these specific types of non-penal fines. So that tells us these statutes are meant to be read in harmony, and because 591 again authorizes the penal fine, that means the term the fine referenced in 592 must mean the penal fine as well. To be clear, Your Honors, it is not the people's position that a defendant can never obtain relief from any of the non-penal fines that the trial court imposed on him here. He does have an avenue for relief, and that is under Section 593, and as discussed earlier, when a defendant defaults on the payment of any fine, penal or non-penal, under Section 593, the defendant may approach the court, and if he makes a good faith showing that his failure to pay was not due to intentional refusal to pay, then the court, just as it may under 592, may grant some relief by revoking or modifying the payment of those fines. Any fine. Any fine, yes, under 593. And I think the reason for that, Your Honor, is once a defendant defaults on the payment of the fine and there are all these additional interest and penalties that are attached to that, I think the State and the people recognize that it's going to be much more unlikely that they're actually going to get that money out of the defendant. And in the code of corrections spirit of restoring offenders to useful citizenship, there is, therefore, a method under 593 to install a payment plan or to modify the payment of the all fines and or potentially revoke the payment of those fines if a defendant simply establishes that good faith effort to pay and shows that it wasn't due to an intentional refusal to pay. Even those under Chapter 15 of the vehicle code? It is the State's position, it is the people's position that any, that a defendant would be able to obtain relief from any fine because that section, Section 593, does not specifically exclude any class of fine as does 591 or 592. And just as a note, I think this court had a question about whether, now leading into this question of whether the defendant here has failed to show good cause, the court does have an ability under Section 594 and under, I believe, a different statute to place an order of withholding or a lien on property for a defendant in order to obtain some of the money that he owes as a result of the fines imposed of him by the trial court.  The question here about whether the court abused its discretion, so even if this court determines that Section 592 does apply to the non-penal fines that the trial court imposed on the defendant here, the court did not abuse its discretion by concluding that defendant here simply failed to establish good cause that would entitle him to relief. The showing of good cause calls to mind the court's equitable authority. And, in essence, requires that a defendant bring his request in good faith, and that, in turn, a court will consider the totality of the equitable circumstances around that request for revocation or modification of the fine. In essence, the principle underlying this standard, as any good faith standard, is that he who seeks equity must come to court with clean hands. Defendant here has failed to show good cause. His request for relief on its face showed that he had an ability to pay the $135 remaining and outstanding fines that he owed. It did not establish that he had any sort of significant or onerous financial obligations while he was incarcerated. In fact, his three filings showed that he was able to continually make and save money while he was in prison. And he doesn't provide a reason why spending the $135 that he could pay would amount to a hardship while incarcerated, because, of course, the state does provide many of defendant's needs as far as living expenses and things like that while a defendant is incarcerated. And similarly, Your Honors, defendant's contention that he might be homeless upon his release from prison is merely speculation, and it does not entitle him to relief or that establishes a showing of good cause. Now, of course, assuming that this court does assume that Section 592 does apply, if you file this request for relief under Section 592 for those fines, he is free to do so, and the court then may consider, of course, whether he has made that showing. But finally, Your Honor, defendant has been outside of prison in between his various DUI convictions since the 2012 conviction, and he has made no effort to pay. And, you know, all of these things, the totality of the circumstances here, these equitable circumstances, do not paint a picture of a good faith effort to pay, and nor does his statement that he would simply like a fresh start establish that as well. Defendant, again, is free to file, again, assuming that this court does disagree with the people and says that Section 592 does apply to those fines, which we believe it does not, but assuming it does, he is free to file a Section 592 for his release from incarceration. So unless this court has any further questions, we ask to affirm.  In rebuttal, sir. Just briefly, hopefully, Your Honors. Since the holding in Bennett, Illinois courts have been litigating what a fine and what a fee is seemingly endlessly. Things that used to be fees are now fines, and some things that were once called fines are now housed in a fee. What the state is asking this court to do is go back to the 1980s and further separate not just fines and fees, but fees and penal fines and fines in addition to penal fines. And those aren't really things that have been considered since all of this fines and fees litigation has happened. Just a few points here. The state pointed out that nothing in the case law or statutes gives 592 petitions, Rule 105 and Rule 106 procedures. Just to be clear, we're asking this court to give those. Just because they haven't been given in the past doesn't mean that this court can't agree that they should be given here, and this court has the authority to do that. And regarding counsel's statement that Mr. Reyes' future homelessness is a speculation, this points to exactly why this 30-day period is important. Normally, in a response period, the state can contest a statement like, I'm going to be homeless in 30 days. If they want to contest that, they can file a response. If they don't contest it, then a well-pleaded fact is taken as true. So the 30-day response period would essentially provide the state with what it's wanting to do here, which is argue why he hasn't shown good cause. And they can argue, oh, he's not going to be homeless, and they can challenge that. But without that requirement of a response period, that's not happening, and it hasn't happened in this case three times. And regarding the second issue, the state puts a lot of weight on the word the as far as the fine. That certainly isn't the only place in the statutes that refer to a fine as the fine, and not all of those references to the fine are referring to a penal fine. And so the state made a point that a judge has no discretion to impose certain fines because they fund important functions. Let's talk about that idea a little bit. The state's responsibility isn't to enforce fines exclusively. It's to seek out justice for the people. And seemingly the state should be able to look at one of these petitions and determine what is the most just outcome. Is it more just for this person to not have to pay this fine? Or is it more just for this program to be funded? Just because the legislature has allocated funds to certain things does not make those any less revocable than a normal penal fine, which gets sent to the general treasury. And regarding the legislative history, counsel argues that the adding of the Chapter 15 Vehicle Code doesn't do anything to fundamentally change 592. Or it's arguing that it did fundamentally change 592. But if we look at where Bennett was at, it's a holding that only discretionary fines can be revoked. Chapter 15 Vehicle Code fines aren't discretionary, they're mandatory. So if you apply Bennett and this amendment at the same time, it does create a situation where the added language doesn't mean anything because those were already accepted if you take the holding of Bennett as true. And then lastly, regarding the avenues of relief, the state says that 593 is the appropriate avenue here, but do we really want to wait for somebody to default on their fines? Or do we want to allow them to get ahead of it and manage their attempts to get out from under whatever hindrance they're having to paying these fines? Do we want to allow them to get ahead of it or do we want to make them go back to court and go through default and do all that? And the state made a point to say that 593 is any fines. It doesn't say that. It includes other things besides fines. It includes fees, restitution, and things like that. But really, looking at the difference there, a fine is a fine that the state's going to collect. 592 allows that to be revoked. Restitution's a different game. In 593, it adds additional things that a defendant would have to do in order to get those types of things to go away, but a fine itself should be able to be revoked by 592. And unless there's any questions from Your Honors, I would conclude and again ask this Court to reverse and remand for Issues 1 and or Issue 2. Thank you very much. This case, Agenda Number 2, Number 128, Court 6-1, People, State of Illinois v. Jorge Reyes, will be taken under advisement. Thank you both for your arguments.